In the Matter of Opening ONE HUNDRED AND SEVENTY-THIRD STREET, Between Tenth Avenue and Kingsbridge Road, in the City of New York.

*Condemnation proceedings — fee of land in a street — when the owner thereof is entitled to substantial damages.*

Where the fee of land already subject to the right of passage thereover by owners of adjacent lots is taken from the owner by legislative authority, such owner is entitled, not merely to nominal damages, but to such substantial damages as may be ascertained by measuring the effect upon the value of his remaining property of the loss of the fee of the street, and this rule is based upon the fact that the ownership of the fee of the land in a street vests in the owner certain rights, of which he is deprived by the taking of the fee of the land for street purposes.

APPEAL by The Mayor, Aldermen and Commonalty of the City of New York from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the city and county of New York on the 10th day of October, 1893, confirming the report of commissioners of estimate and assessment.

*Carroll Berry*, for the appellant.

*Geo. J. Munger*, for the landowners, respondents.

VAN BRUNT, P. J.:

This proceeding was duly commenced by the city authorities for the purpose of acquiring title to certain premises required for the opening of One Hundred and Seventy-third street, from Tenth avenue to the Kingsbridge road, in the twelfth ward of the city of New York, such street being one of those laid out upon the official plan of said city.

The title of the various parties to the land in question was derived, either directly or through certain mesne conveyances, from Philo T. Ruggles, referee in the partition suit between W. I. Chase and others, plaintiffs, and Nelson Chase and others, defendants, the property partitioned being known as the Jumel tract, extending generally from One Hundred and Fifty-ninth street to One Hundred and Seventy-fourth street, and between Edgecomb avenue and Kingsbridge road. The judgment or decree in

FIRST DEPARTMENT, MAY TERM, 1894.                    [Vol. 78.

partition was filed on the 6th of June, 1881, whereby it was adjudged that the premises were so circumstanced that an actual partition could not be made without great prejudice to the owners thereof, and a referee was appointed for the purpose of selling the same. The referee by the judgment was directed to procure to be made such surveys and diagrams of all the lands and premises as he might think necessary for the purpose of said sale, and also might lay down and designate upon said maps or diagrams, roads, streets, avenues or places to be used for streets. And it was further provided that the title of the purchasers of such parts of such land as should be laid down upon the said maps or diagrams fronting upon such roads, streets, avenues or places, should extend to the center line of such roads, streets, avenues or places, subject only to the easement and right of way of all the purchasers of any part of said land and premises; and such roads, avenues or places should not be considered as dedicated thereby to public use.

In pursuance of the authority conferred by this decree, the refferee filed in the office of the register of the city and county of New York a map, entitled: " Map of property belonging to the Jumel estate in the city of New York, north of One Hundred and Fifty-ninth street." All the conveyances made by the referee were with reference to this map, and conveyed the land by certain numbers, and bounded the property conveyed by the streets and avenues shown upon said map, among which are One Hundred and Seventy third street, Tenth avenue and Edgecomb road, the property running thence along the side of the street or avenue upon which the property is bounded. The deeds further contained the provision that such lands are conveyed together with such part of any street, avenue or road, or place laid down on said map, as lies in front of or adjoining the premises conveyed, and between the same and the center of every such street, avenue, road or place, subject only to the easement and right of way of all the purchasers of any part of the said land and premises, and such roads, avenues or places were not to be considered as thereby dedicated to public use.

The official map of the city laying out the streets and avenues north of One Hundred and Fifty-fifth street, among which are One Hundred and Seventy-third street, Audubon avenue and Tenth avenue, was filed on the 25th of May, 1869, and the streets and

avenues on the Jumel map corresponded with the city map, the lines coincident with the lines of the corresponding street or avenue on the city map.

Subsequently these proceedings were taken for the purpose of acquiring title to the land situated within the limits of One Hundred and Seventy-third street, as above stated. Thereafter such proceedings were had that commissioners of estimate and assessment were appointed, who, in December, 1889, made their report, by which it appears that they had made nominal awards only to the adjoining owners for the lands embraced within the limits of the street. When this report was presented to the court, confirmation was opposed by the adjacent lot owners; and it was held that there had been no dedication of the land embraced within the street to public use by the conveyances from the referee in the Jumel action, and the matter was referred back to the commissioners for reconsideration. Upon such reconsideration, the commissioners made up a new abstract of estimate and assessment, making the same awards and assessments as in their first report. This second report was presented to the court, and its confirmation was objected to and refused by the court, upon the ground that there was sufficient evidence to warrant and require a substantial award to the objectors in accordance with the previous instructions of the court, and new commissioners were appointed by the court. The new commissioners subsequently filed their abstract and made their report, by which they awarded to the abutting owners substantial amounts for the lands situate within the limits of the street. A motion having been made for confirmation, this report was objected to by the appellants; but, notwithstanding such objections, the report was confirmed, and from the order thereupon entered this appeal is taken.

The single question presented on this appeal is whether the abutting or adjoining landowners were entitled to substantial awards for the lands taken. It is urged upon the part of the city that, as each purchaser of land at this partition sale intended to and did devote the land to use as a street, at least as between himself and those who purchased other lands bounded upon this street, each acquired an easement in the strip of land for use as a highway in order to have access to and from the lots purchased, which they were entitled to have kept opened as a street for their benefit; and

that thereafter the owner held the title incumbered by the easement for the benefit of the grantees of the lots which had been sold, and it was subject to that easement when this application was made; and that the rights which the several grantees of lots on both sides of this strip of land thus acquired impressed upon it all the characteristics of a public street, though it may not have been completely dedicated by the owners to that purpose or accepted by the city authorities as a highway; and that the servitude thus impressed upon the land could not be extinguished except by the concurrence and by the united act of every person who owned a lot bounded by the street; and that, therefore, the commissioners could only award to the owner the value of the public easements proposed to be taken, deducting therefrom the value of the private easement which already incumbered the property, which would leave nothing but a nominal value in the owner. It is claimed that this principle is enunciated in *The Matter of Adams* (141 N. Y. 297), and it is urged that it is decisive of the question before this court.

It may be that the principles enunciated in *The Matter of Adams* seem to be somewhat in hostility to those which prevailed in the disposition of the appeal in *The Matter of the Eleventh Avenue* (81 N. Y. 446); but the latter adjudication must necessarily control. We think, however, that the facts in *The Matter of Adams* differ so materially from those in the case at bar that that case has no application. It is not necessary to discuss the question of dedication, because it is apparent that under the circumstances disclosed in this case there was no such dedication as gave the public absolute rights, independent of and distinguishable from those of the owners of the lots fronting upon the street in question. It is conceded in the case cited that there was no dedication; and the facts in the case at bar are no stronger in their tendency to establish such dedication. In the case of *Adams* the owners of the fee of the street were not the owners of the land abutting upon the street; but the grantors of such land abutting upon the street had reserved to themselves the title to the land covered by the street; and it was held that they, having nothing but this mere title, which was subject to a perpetual easement, had sustained no damage when the land was taken for the purposes of a public street.

It was also held in the case of *The Village of Olean* v. *Steyner*

(135 N. Y. 341) that when an easement for a highway is taken where a private easement previously existed, nominal damages merely should be awarded, because the easement taken is simply the equivalent of the private easement displaced; the change alters the control but does not increase the burden.   In that case the distinction is pointed out between cases arising in cities, where, under the statute, the fee is taken, and in villages, where only an easement for a highway is required.

In the case of *The City of Buffalo* v. *Pratt* (131 N. Y. 293) it was distinctly held that where the ownership of the fee of land in the street is taken from the adjoining owner by legislative authority the owner is entitled not merely to nominal damages, but to such substantial damages as may be ascertained by measuring the effect upon the value of his remaining property of the loss of the fee of the street.   And this rule was based upon the fact that the ownership of the fee of the land in the street by an adjoining owner vests in him certain rights of which he is deprived by the taking of the fee of the land, even for street uses.   This principle seems to cover the case at bar.

It is claimed, however, by the appellants that it does not, in that by the proceeding in the case cited there is vested in the city an absolute fee, whereas, in the proceedings taken in the city of New York for acquirement of property for street purposes, there is vested in the city simply a qualified fee, the city taking it for street purposes only.   An examination, however, of the section of the charter which is referred to in the opinion in the case cited, indicates that the fee taken in the two proceedings is substantially the same; in the one there being an express declaration in the statute authorizing the condemnation, that the property shall be held for street uses, and in the other the authority to take is only for public streets, etc., and hence impressed with the same implied trust as is expressly impressed upon the land taken in the city of New York.

We do not think, therefore, that the question is open for discussion in view of the principles laid down in the case of *The City of Buffalo* v. *Pratt.*

The order should be affirmed, with costs.

FOLLETT, J., concurred.

Order affirmed, with costs.